957 So.2d 879 (2007)
STATE of Louisiana, Appellee
v.
Raymond FULLER, Appellant.
No. 42,050-KA.
Court of Appeal of Louisiana, Second Circuit.
May 16, 2007.
*880 Louisiana Appellate Project, by Christopher A. Aberle, Mandeville, for Appellant.
J. Schuyler Marvin, District Attorney, John M. Lawrence, Mike O. Craig, Assistant District Attorneys, for Appellee.
Before STEWART, DREW and LOLLEY, JJ.
STEWART, J.
The defendant, Raymond Fuller, was convicted as charged of the taking of contraband to a state-owned and administered hospital or related facility. The trial court sentenced him to two years' imprisonment at hard labor, suspended the sentence, and placed him on active probation for two years with special conditions. The defendant now appeals. For the reasons more fully explained herein, we reverse the defendant's conviction and sentence.

FACTS
Raymond Fuller was admitted as a patient to Willis-Knighton Hospital in Bossier City for treatment of severe pancreatitis. Nurse Nicole Rowell testified that the defendant was her patient for two days during his four-day hospitalization and that he was administered narcotic medication for pain management of his illness. Although Nurse Rowell had no trouble with Fuller during her first day with him, she noted that he began exhibiting strange behavior during her second day caring for him. Nurse Rowell testified that Fuller wanted to leave the floor of his hospital room, that he pulled out his IV, that he was hollering out the window to someone when no one appeared to be there, and that he was smoking in his room after being told not to do so. As a result of the smoking, Nurse Rowell confiscated defendant's pack of cigarettes and lighter, which she placed in a drawer in the medicine room. Because of his strange behavior, Fuller was transferred to the Intensive Care Unit for closer monitoring. However, after being given additional sedating medication, the defendant's behavior became more erratic.
Nurse Rowell and her supervisor then searched the defendant's hospital room to see if he might have ingested anything that could have caused his erratic behavior. Nurse Rowell found an empty bottle of "Black Velvet," a brand of bourbon, another pint of "Black Velvet," and cigarette butts all over the room. Nurse Rowell then went to check the confiscated cigarettes, dumped them out of their container, and saw what appeared to be a rolled marijuana joint. Nurse Rowell also testified that defendant's room smelled of smoke and aerosol spray meant to conceal the odor. Nurse Rowell called Deputy Robbie Roberson, a Bossier Parish Sheriff Deputy who was working as a security officer at the hospital that evening. He placed the suspected marijuana joint in a sealed evidence bag, which was later taken to the North Louisiana Criminalistics Laboratory for testing. Deputy Roberson testified that the rolled cigarette appeared to *881 be a marijuana joint and that the ashes on the window sill of defendant's hospital room smelled of marijuana. At trial, the state presented a laboratory certificate indicating that the North Louisiana Criminalistics Laboratory had determined that the rolled cigarette did contain marijuana. While Fuller was still in the hospital, Deputy Roberson issued him a citation for contraband in a hospital and possession.
At trial, Fuller denied bringing marijuana into the hospital and testified that he rarely drank alcohol. On cross-examination, he testified that he tested positive for marijuana because he tried smoking marijuana before he came into the hospital in an effort to relieve the pain from the pancreatitis and to calm his upset stomach. Following the trial, the jury convicted Fuller of taking contraband into a state-owned hospital. He now appeals, assigning as error that there was insufficient evidence to support the conviction. Specifically, the state failed to prove that Willis-Knighton Hospital is a state-owned and administered hospital.

DISCUSSION
Sufficiency of Evidence
The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).
The state charged the defendant through bill of information with taking contraband, specifically marijuana, to "Willis Knighton [sic] Hospital in Bossier Parish," under La. R.S. 14:402.1. After the state rested its case at trial, defense counsel filed a motion to quash the indictment, wherein it alleged that Willis-Knighton Hospital is not a state-owned and administered hospital or related facility as required by La. R.S. 14:402.1. Defense counsel attached documents downloaded from the Louisiana Secretary of State's website, which indicated the following: that "Willis-Knighton Bossier Health Center" is a registered trade name for the non-profit corporation of "Willis-Knighton Medical Center"; that its type of business is a hospital; that "Willis-Knighton Medical Center" was originally incorporated in 1949; and, that the registered agents for "Willis-Knighton Medical Center" are James K. Elrod, president of the corporation, and Robert D. Huie, executive vice president of the corporation.
In response to the motion to quash, the state argued that Willis-Knighton is a "related facility" because LSU Hospital, which is a state-owned and administered hospital, shares programs with Willis-Knighton, because LSU medical residents are taught at Willis-Knighton, and because Willis-Knighton accepts payment from Medicaid. Further, the state argued that "the purpose of the legislature in the caveat of related facilities, it includes and protects the privately owned [sic] hospitals or privately run [sic] hospitals that are associated with the state and that also have contracts with the state, teach their doctors, provide for their surgeries and share responsibilities." Defense counsel responded by arguing that the term "related facility" meant that it is a facility that is also state-owned and administered, not that it provides services to other state agencies.
After hearing the arguments, the trial judge denied the motion on the basis that Willis-Knighton Hospital is a "related facility" due to its shared programs with LSU Hospital, the fact that LSU medical residents are trained there, and because, *882 "I(the judge) know for a fact that LSU would also share with some federally owned [sic] and operated hospitals that are in another parish."
The defendant now argues on appeal that the trial court erred in denying his motion to quash because the term "related facility" refers to out-patient clinics or out-patient facilities that are stated-owned and administered, not other facilities that merely have a relationship with a state-owned and administered hospital. The defendant argues that the relationship between Willis-Knighton Hospital and LSU Hospital does not make Willis-Knighton a "state-owned and administered hospital or related facility" as required by La. R.S. 14:402.1. The State argues that the logical meaning of "related facility" in La. R.S. 14:402.1 includes Willis-Knighton Hospital.
According to La. R.S. 14:402.1, the offense of "Taking of contraband to state-owned hospitals unlawful" is defined in pertinent part as follows:
A. It shall be unlawful for any person to introduce or attempt to introduce into or upon the grounds or buildings of any state owned and administered hospital or related facility, except through regular channels as authorized by the administrator of the hospital, any of the following articles which are hereby declared contraband for the purposes of this Part, namely: Any intoxicating beverage or beverage which causes or may cause an intoxicating effect; any narcotic or hypnotic or exciting drug of whatever kind or nature including nasal inhalators of any variety, sleeping pills or barbiturates of any variety that create or may create a hypnotic effect if taken internally; and any firearm or other instrumentality customarily considered a dangerous weapon.
There is no question that marijuana and liquor would be considered contraband under this statute. The relevant question in this case, however, is whether Willis-Knighton Hospital is a "state-owned and administered hospital or related facility" as required by La. R.S. 14:402.1.
The documentation presented by the defendant to the trial court clearly indicates that Willis-Knighton is a private non-profit corporation and, thus, not a "state-owned and administered hospital." The state acknowledged as much in its oral response to the motion to quash and alleged that it was relying upon Willis-Knighton Hospital being a "related facility." However, the state presented no evidence to the trial court or to the jury regarding whether Willis-Knighton Hospital is a "state-owned and administered hospital or related facility." Instead, the state presented only non-supported anecdotal information through the prosecutor's arguments to the trial court:
It's well known that LSU Hospital which is a state owned and administered hospital. It kind of has its fingers on all of our local hospitals. It shares programs, teaches doctors, sends doctors and residents over for a teaching as well as they do at the VA Hospital. They take Medicaid. There's lots of ways the state is involved in the administration at Willis Knighton Hospital. And Willis Knighton is involved in teaching students and residents at LSU. So I think the purpose of the legislature in the caveat of related facilities, it includes and protects the privately owned hospitals or privately run hospitals that are associated with the state and that also have contracts with the state, teach their doctors, provide for their surgeries and share responsibilities.
Hence, because it was agreed by the defendant and the state that Willis-Knighton Hospital is not a "stated-owned and administered hospital," the question of whether *883 it qualifies under La. R.S. 14:402.1 as a "related facility" is an issue of statutory interpretation. Because there are no published cases related to this statute, this is also an issue of first impression.
According to La. R.S. 14:3, Louisiana criminal statutes must be "given genuine construction, according to the fair import of their words, taken in their usual sense, in connection with the context, and with reference to the purpose of the provision." State v. Spears, 39,302 (La.App.2d Cir.09/27/06), 940 So.2d 135, 141; State v. Ruffins, 41,033 (La.App.2d Cir.09/20/06), 940 So.2d 45, 50. According to Webster's New College Dictionary, the word "related" is an adjective defined as connected or associated. Within the context of "state-owned and administered hospital or related facility," a plain reading of the statute would indicate that a "related facility" would be another state-owned and administered facility, such as a clinic, nursing home, or entity that administers outpatient medical treatment.
The state argues that a related facility may include a medical facility that simply has a relationship with a state-owned and administered hospital or accepts state funding such as Medicaid. The state's proffered interpretation of "related facility" does not appear to be the most logical construction of this statutory language for two reasons.
First, if having any relationship with a state-owned and administered hospital or the acceptance of state funds makes one a "related facility," then every hospital would qualify as a "related facility." If it had been the intention of the Louisiana Legislature to proscribe this conduct at all hospitals or medical facilities, then the statute would have simply stated that it was illegal to take contraband into a hospital or medical facility. There would be no need for such a complicated interpretation of what constitutes a "related facility."
Second, because working relationships between public and private agencies do not transform those private agencies into public agencies, it cannot be assumed that the legislature intended for this statute to apply to all hospitals or medical facilities. As noted by this court in State v. Duque, 42,074 (La.App.2d Cir.01/18/07), 946 So.2d 760, a private, non-profit corporation can provide public services, and even administer state funds, without losing its identity as a private, non-profit corporation. In that case, this court discussed whether an employee of a private, non-profit corporation performing the duties of a community action agency could be charged with malfeasance in office pursuant to La. R.S. 14:134, which is a criminal statute applicable only to public officers and public employees. In so doing, this court looked at the factors set out in State v. Smith, 357 So.2d 505, 507 (La.1978), to determine whether an entity is a public or private agency: (1) the entity was created by the legislature; (2) the powers were specifically defined by the legislature; (3) the property of the entity belonged to the public; and (4) the entity's functions were exclusively of a public character and performed solely for the public benefit. State v. Duque, 946 So.2d at 762. Given that Willis-Knighton was not created by the legislature, that its powers are not defined by the legislature, and that its property does not belong to the state, the fact that it accepts state-funding through Medicaid to provide medical services to the poor does not change its status as a private, non-profit corporation. Further, because Willis-Knighton is not a public agency, it does not qualify as a state-owned and administered hospital or related facility. Therefore, it cannot be assumed that Willis-Knighton is a "related facility" under La. *884 R.S. 14:402.1 because it is a private, non-profit corporation operating a hospital.
This court has previously stated that "those who are not clearly included by the terms of a criminal statute are excluded." State v. Duque, 946 So.2d at 762, quoting State v. Smith, 357 So.2d at 508. A plain reading of the phrase "state-owned and administered hospital or related facility" indicates that the "related facility" must also be state-owned and administered, such as a state-owned and administered clinic or nursing home. Thus, privately-owned hospitals are not clearly included within the terms of La. R.S. 14:402.1. If the legislature had intended for this statute to apply to all hospitals or medical facilities, it would have simply stated that it was unlawful to take contraband into all hospitals or medical facilities. Therefore, a plain reading of this statute indicates that the defendant cannot be convicted of taking contraband into a state-owned and administered hospital or related facility under La. R.S. 14:402.1 when these actions clearly occurred at a private hospital. Thus, the trial court erred when it denied defendant's motion to quash the bill of information. This assignment therefore has merit.
The defendant argues that the state presented no evidence to the jury that Willis-Knighton is a "state-owned and administered hospital or related facility." The state argues that it presented evidence that defendant introduced marijuana into the hospital, because it was found in his hospital room while he was a patient at Willis-Knighton. However, we find that Willis-Knighton is not a state-owned and administered hospital or related facility as required by La. R.S. 14:402.1 and, therefore, the defendant cannot be prosecuted under this statute because the alleged action did not take place at a state-owned and administered hospital or related facility. Moreover, the defendant is correct in his allegation that the state failed to present any evidence before the jury to prove that Willis-Knighton is a state-owned and administered hospital or related facility. In arguing the motion to quash, the state presented only non-supported anecdotal information through the prosecutor's arguments to the trial court.
Given that the state failed to present any evidence before the jury on the element of state ownership or operation of Willis Knighton, the defendant would have prevailed on the claim that the state failed to present sufficient evidence of this charge, even if the issue was not already moot.
Further, the jury's verdict does not reflect that it made a factual finding regarding whether Willis-Knighton is a state-owned and administered hospital or related facility. Most telling is the fact that the trial court's instructions to the jury omitted that the jury must find that defendant committed the alleged actions on the premises of a state-owned and administered hospital or related facility:
The defendant is charged with introducing or attempting to introduce a narcotic or hypnotic or excited drug, namely marijuana, upon the premises of a state owned or administered hospital or related facility. In order to convict the defendant of introducing or attempting to introduce contraband, namely marijuana, upon the premises of the hospital you must find: (1) That the defendant knowingly and intentionally introduced a substance which was marijuana; and (2) That at the time of his possession the defendant was upon the premises of a hospital.
In response to the jury's questions, the trial court issued the following supplemental instruction, wherein it again omitted the need for finding that the defendant *885 had committed the alleged actions on the premises of a state-owned and administered hospital or related facility:
In order to convict the defendant of introducing or attempting to introduce contraband, namely marijuana, upon the premises of the hospital you must find: (1) That the defendant knowingly and intentionally introduced or attempted to introduce a substance which was marijuana and (2) That at the time of the possession the defendant was upon the premises of the hospital.
Further, in its opening and closing statements, the state referred to the charged offense as "introducing contraband into a hospital" or introducing contraband into Willis-Knighton Hospital. In its rebuttal arguments, the state simply told the jury that the issue of whether Willis-Knighton is a state-owned and administered hospital or related facility had already been addressed and resolved.
The jury's verdict does reflect, however, that it believed the defendant was in possession of marijuana. Possession of marijuana is a criminal offense defined by La. R.S. 40:966(E), wherein the grade of offense and penalty depend upon whether this is a first or subsequent conviction for possession of marijuana. Therefore, the defendant's alleged conduct of possession of marijuana was illegal conduct under La. R.S. 40:966(E), and the state could have chosen to charge defendant with this offense rather than the offense of taking contraband into a state-owned hospital.
According to La. C. Cr. P. art. 821(E), the appellate court may take corrective action if it finds that the evidence supports a conviction for a lesser included responsive offense:
E. If the appellate court finds that the evidence, viewed in a light most favorable to the state, supports only a conviction of a lesser included responsive offense, the court, in lieu of granting a post verdict judgment of acquittal, may modify the verdict and render a judgment of conviction on the lesser included responsive offense.
Particular responsive verdicts are contained for specific charged offenses in La. C. Cr. P. 814. Because a responsive verdict for the offense of taking contraband into a state-owned hospital is not contained in La. C. Cr. P. art. 814, any possible responsive verdict for that offense is governed by La. C. Cr. P. art. 915:
In all cases not provided for in Article 814, the following verdicts are responsive:
(1) Guilty;
(2) Guilty of a lesser and included grade of the offense even though the offense charged is a felony, and the lesser offense is a misdemeanor; or
(3) Not Guilty.
The offense of "possession of marijuana" is not a statutory "lesser and included grade of the offense" of the offense of "taking contraband into a state-owned hospital." Thus, this court is precluded from exercising its discretion under Article 821(E) to modify the defendant's verdict to guilty of possession of marijuana. Therefore, not only would the evidence be insufficient to support a conviction of taking contraband into a state-owned hospital, this court cannot modify the verdict to possession of marijuana.

CONCLUSION
For the foregoing reasons, we reverse the defendant's conviction and sentence.
REVERSED.